Filed 8/14/20  P. v. Dodd CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072051 |
| v. | (Super.Ct.No. FSB1401994) |
| DAVID WADE DODD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge.  Affirmed in part; reversed in part with directions.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Kristen Ramirez and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

On May 26, 2017, defendant and appellant David Wade Dodd was convicted by a jury of assault with a firearm. (Pen. Code,[1] § 245, subd. (a)(2).) The jury also found that he personally used a firearm in the commission of the offense.[2] (§ 12022.5, subds. (a), (d).) In a bifurcated proceeding, the trial court found that defendant had suffered two prior serious or violent felony convictions under the three strikes law (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)) and had served five prior prison terms (§ 667.5, subd. (b)). On January 18, 2019, the court sentenced defendant to state prison for 25 years to life, plus 24 years.

Defendant appeals contending (1) the trial court erred in denying his motion for mistrial based on alleged prosecutorial misconduct;[3] (2) the trial court erred in instructing the jury with CALCRIM Nos. 362, 371, and 372 because they allow irrational permissive inferences in violation of the due process guarantees of the state and federal Constitutions;

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant was also charged with attempted murder (§§ 664, 187), kidnapping (§ 207, subd. (a)), and corporal injury of a cohabitant or significant other (§ 273.5, subd. (a)). However, he was acquitted of attempted murder and kidnapping. The corporal injury charge, as well as the lesser included offense of attempted voluntary manslaughter, were dismissed after the trial court declared a mistrial.

[3] "Because we consider the effect of the prosecutor's action on the defendant, a determination of bad faith or wrongful intent by the prosecutor is not required for a finding of prosecutorial misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.) Indeed, the "'term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

(3) the trial court abused its discretion in denying his *Romero*[4] motion and refusing to strike the prior serious felony enhancements under section 667, subdivision (a); (4) defendant's sentence constitutes cruel and unusual punishment; (5) the imposition of the court operations fee and the criminal conviction assessment without a determination of his ability to pay violated his due process right as articulated by *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*); (6) execution of the restitution fine should be stayed due to defendant's indigence; and (7) defendant's four[5] one-year enhancements for his prior prison terms should be stricken based on newly enacted Senate Bill No. 136 (2019-2020 Reg. Sess.). The People concede the four one-year enhancements should be stricken, and we agree. Otherwise, we reject defendant's contentions.

## I. PROCEDURAL BACKGROUND AND FACTS

On the morning of June 12, 2012, San Bernardino Police officers responded to shots fired near an auto body and paint shop. In the alleyway behind the shop, officers observed a pickup truck[6] occupied by M.A. M.A. told the officers that she and

---

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[5] The trial court found that defendant had served five prior prison terms (§ 667.5, subd. (b)): two for convictions for felon in possession of a firearm, two for receiving stolen property, and one for a conspiracy conviction. With the prosecution's acquiescence, the court struck the prior prison term allegation involving one of the receiving stolen property convictions because it had been reduced to a misdemeanor. Thus, the court imposed four one-year enhancements under section 667.5, subdivision (b).

[6] The truck was registered to both M.A. and defendant.

defendant, her boyfriend at the time,[7] had been arguing at her home while she was leaving for work.  As she entered the truck, defendant forced himself into the driver's seat and pushed her to the passenger side.  He drove to the alleyway and stopped.  M.A. exited the truck, jumped into its bed, and armed herself with a hammer.  Defendant also exited the truck with a gun and pointed it at her.  He said, "I'll shoot you," and "I'll cap you, bitch."  Defendant fired a few rounds at M.A. and then left the scene.  The owner of the body shop called 911 while his son video recorded the incident.

Weeks later, a police officer stopped defendant in the truck and found a loaded gun, with eight rounds of .22-caliber ammunition, in the driver's side door panel.  Subsequent testing determined the cartridge case located in the alleyway had been fired from the gun found in the truck.

In August 2014, a search of M.A.'s residence produced letters addressed to her from defendant.  In one letter, defendant wrote:  "'The story is this for the shooting incident:  Unknown dude tried to take the truck that day so you ran out there, jump in the back.  He drove to that alley, got out and said he was getting the truck for me, and he shot in the bed of the truck trying to scare you but never ever did he point the gun at you.  Some heated words were exchanged.  You thought I was at Sophie.  That's why you sent the cops there.  Other individuals got arrested for unrelated charges.'"  In other letters, defendant wrote a list of names of people, including M.A., who could not come to court.

---

[7] The two were married in 2015.

Officer-monitored jail calls between defendant and M.A. were played for the jury. During one conversation, the following exchange occurred:

"[DEFENDANT]: I know we got to stop that extreme shit because that's the only reason I got busted. You know that right?

"[M.A.]: Mmm hmm.

"[DEFENDANT]: Me trying to make you dance in the back of the truck, huh?

"[M.A.]: Yep.

"[DEFENDANT]: (Laughing) Hey, I told you, 'Dance bitch, dance' huh?

"[M.A.]: Yep. [¶] . . . [¶] And I said, 'No. Shoot me!'

"[DEFENDANT]: Bam bam, huh?

"[M.A.]: (Laughing) [¶] . . . [¶]

"[DEFENDANT]: . . . Did I scare you? You, you, you didn't think I was gonna pull the trigger, huh?

"[M.A.]: Yeah, I knew you would.

"[DEFENDANT]: Huh? I wasn't trying to shoot you though. (Pause) You know that, right? Huh?

"[M.A.]: Sure.

"[DEFENDANT]: You know that. If I was trying to shoot you, I would have shot ya."

## II. DISCUSSION

### A. *The Trial Court Properly Denied Defendant's Motion for Mistrial.*

Defendant contends the trial court erred in denying his motion for mistrial, which was based on prosecutorial error. We conclude there was no prosecutorial error, and therefore no basis for defendant's motion for mistrial.

### 1. *Additional background facts.*

Prior to trial, defendant moved, in limine, to exclude any evidence or reference to his prior arrests or convictions. The prosecutor agreed to delete references to probation or other aspects of defendant's criminal history in the recordings of defendant's jailhouse phone calls. However, the recording of defendant's June 20, 2012, phone call with M.A. included a discussion about defendant's probation status:

"[DEFENDANT]: . . . Are you gonna come see me?

"[M.A.]: I can't because they wouldn't let me schedule an appointment because they said you had court today, but since they dropped them charges, you don't have court.

"[DEFENDANT]: I know. So, did, what does it say on the computer?

"[M.A.]: Release.

"[DEFENDANT]: Huh?

"[M.A.]: It says release.

"[DEFENDANT]: Oh, so they're gonna release me?

"[M.A.]: Cause that's, cause that's . . . no, because they just. It says release for those charges, but you still have the probation hold, no bail.

6

"[DEFENDANT]: Oh, ok. Yeah, somebody needs to call my probation officer and tell him what's up. You know what I mean? Cause the cops tried to call, the cops called me down there yesterday after I talked to you. The cops called me down there and the cop that arrested me, uh Keil or whatever. And he said look, 'I've been trying to get ahold of probation because this is bogus and you shouldn't even be in jail right now.' He says, 'I've been trying to get ahold of them and to pull their charges off you.' He goes uh, 'You'll probably do a 10 day flash.' But you just got to call probation and tell them look, he's gonna lose his job. Have [J.] call them or whatever. You know what I mean?"

Toward the end of the call, defendant again referenced probation, saying, "Now that I'm not going to court, what are they gonna do? Call the Probation Department and get on them." M.A. replied, "I will."

Immediately after the recording was played, defense counsel asked to address the trial court outside the presence of the jury. He explained that he had previously spoken with the prosecutor and understood that the jailhouse phone calls would be redacted to eliminate any reference to probation and prior criminal history. Defense counsel announced his intention to move for mistrial. In response, the prosecutor asserted she had no malicious intent, and represented that she had sent the jailhouse phone call transcripts to defense counsel, and that counsel said, "*I don't see anything specifically in [these] transcripts.*" The court reserved ruling on the issue and trial resumed.

The following week, the trial court raised the issue outside the presence of the jury, and defense counsel moved for a mistrial. He explained there were five jailhouse phone call recordings—three involving M.A. were introduced at trial—and he admitted

he might have mistakenly believed the discussions regarding defendant's probation were on the two recordings that were not offered at trial. However, defense counsel asserted that he had prior conversations with the prosecutor during which he informed her that any recordings referencing defendant's probation status needed to be redacted before they were played for the jury. In response, the prosecutor stated that she had sent defense counsel the transcripts of the three recordings that were played for the jury, and defense counsel indicated the transcripts looked "fine." The prosecutor added the reference to probation was brief and insignificant compared to the other damaging evidence against defendant.

The trial court agreed the comments regarding probation should not have been admitted; however, it denied the mistrial motion on the grounds the comments were brief and did not irreparably damage defendant's right to a fair trial when considered in the context of the remaining evidence submitted against him. The court offered to admonish the jury to disregard the references to defendant's probation status, but defense counsel declined for tactical reasons, stating that he did not want to draw further attention to the subject. The court directed the prosecutor to redact the recording of the jailhouse phone call in case the jury wished to review it during deliberations.

### 2. *Applicable legal principles.*

"[W]e review a ruling on a motion for mistrial for an abuse of discretion, and such a motion should be granted only when a party's chances of receiving a fair trial have been irreparably damaged. In turn, '"[t]he applicable federal and state standards regarding prosecutorial misconduct are well established. '"A prosecutor's . . . intemperate behavior

8

violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" [Citation.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"""" (*People v. Ayala* (2000) 23 Cal.4th 225, 283-284.)

"'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.'" (*People v. Silva* (2001) 25 Cal.4th 345, 373.) However, "[e]ven assuming for purposes of argument that the prosecutor's actions constituted misconduct, we may not reverse the judgment if it is not reasonably probable that a result more favorable to the defendant would have been reached in its absence." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133.)

### 3. Analysis.

Here, defendant's claim of prosecutorial error is based on the prosecutor's duty to guard against "the inadvertent disclosure of [defendant's] probation status." According to the record, the prosecutor did just that when she sent defense counsel the transcripts of the three jailhouse phone call recordings that were played for the jury, and defense counsel indicated the transcripts looked "fine." Because the prosecutor did not purposely introduce the information (and defense counsel mistakenly believed the discussions regarding defendant's probation were on the recordings not offered at trial), this case is

distinguishable from *People v. Parsons* (1984) 156 Cal.App.3d 1165, where the prosecutor acted in bad faith by inquiring about an unrelated arrest, and *People v. Bentley* (1955) 131 Cal.App.2d 687, overruled on another ground in *People v. White* (1958) 50 Cal.2d 428, 430-431, where a police officer intentionally testified the defendant was a suspect in another case, on which defendant relies. (Cf. *People v. Scott* (1997) 15 Cal.4th 1188, 1218 ["Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct."].)

Assuming arguendo the prosecutor did commit error, this was not such an extreme example of prosecutorial error that striking the disclosure of defendant's probation status and instructing the jury to disregard it would not have cured any error. (*People v. Valdez* (2004) 32 Cal.4th 73, 123 [prosecutorial error claim premised on prosecutor eliciting testimony designed to reveal defendant's prior conviction forfeited where an admonition would have cured any prejudice].) Nonetheless, when the trial court indicated it would not grant the mistrial motion but would admonish the jury to disregard the references to defendant's probation status, defense counsel declined, making a tactical decision not to draw further attention to the subject. We reject defendant's claim that the error in the disclosure of defendant's probation status was "so egregious that instruction of the jury would be futile." The reference to defendant's probation status was brief, there was no reference to the nature of his prior conviction (including whether it was a felony or a misdemeanor), and no other potentially damaging details of his criminal history were disclosed.

10

In any event, "[w]hether or not it was an abuse of discretion to deny the defense's motion for mistrial, we conclude any error was harmless." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1581 (*Harris*) [denial of mistrial motion is harmless when evidence of defendant's guilt is "overwhelming and undisputed"].) "There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*Id.* at p. 1580.) However, in this case, the brief reference to defendant's probation status does not appear to have had a prejudicial "impact on the outcome of the trial," as asserted by defendant. Although defendant was charged with attempted murder, kidnapping, corporal injury of a cohabitant or significant other, and assault with a firearm, the jury only convicted him of assault with a firearm. The verdict indicates the jury considered the counts individually and the evidence carefully, and that it was not so inflamed by the reference to defendant's probation status that it convicted him on that basis.

As to the assault with a firearm charge, there was overwhelming evidence to support the conviction. The evidence against defendant included: (1) M.A.'s initial report that defendant produced a gun, pointed it at her, and said, "I'll shoot you" and "I'll cap you, bitch"; (2) witness reports of a male firing at the victim; (3) a 911 call in which a male is heard exclaiming, "[H]e's got the gun, he's gonna kill the, the lady," and "Yeah, he's shooting the lady"; (4) defendant's acts of fleeing, hiding, giving a false name,

11

writing letters to M.A. urging her to lie about the events, and identifying people who should not appear at court to testify against him; (5) defendant's admission during a jailhouse phone call that he pointed a gun at M.A. and fired shots while telling her, "Dance bitch, dance"; and, (6) the fact the loaded gun taken from defendant's truck was the source of cartridge casings found in the alleyway.

Given the ample evidence to support the jury's verdicts, it is not reasonably probable defendant would have obtained a more favorable result had the reference to his probation status not been made. (*Harris*, *supra*, 22 Cal.App.4th at p. 1581; see *People v. Williams* (1981) 115 Cal.App.3d 446, 453 ["In light of the admission of the prior offenses as well as other substantial evidence pointing to defendant's identity as the perpetrator, it is not reasonably probable that he would have obtained a more favorable result had the remark about his parole status not been made."].)

*B.      CALCRIM Nos. 362, 371, and 372.*

Defendant contends the three "consciousness of guilt" instructions under

CALCRIM Nos. 362 (false statements), 371 (suppression/fabrication of evidence), and

372 (flight) allowed the jury to draw irrational inferences of guilt in violation of the due

process guarantees of the state and federal Constitutions.[8]  He further asserts these

instructions allowed the jury to infer guilt in a manner that "run[s] afoul of the

constitutional limitation noted by the Ninth Circuit" in *Turner v. Marshall* (9th Cir. 1995)

---

[8]  As provided to the jury, CALCRIM No. 362 stated:  "If the defendant made a false or misleading statement relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.  [¶]  If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

As provided to the jury, CALCRIM No. 371 stated, in part:  "If the defendant tried to hide evidence . . . against him, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance.  However, evidence of such an attempt cannot prove guilt by itself. . . ."

As provided to the jury, CALCRIM No. 372 stated:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."

63 F.3d 807, 820, overruled on other grounds by *Tolbert v. Page* (9th Cir. 1999) 182 F.3d 677, 685.**9** We disagree.

"'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' [Citation.] We determine the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction." (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.) "'Errors in jury instructions are questions of law, which we review de novo.'" (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642.)

Here, CALCRIM Nos. 362, 371, and 372 permit, but do not require, the jury to infer from a defendant's flight, knowingly false or misleading statements, or suppression of evidence pertaining to the crime, that he was aware he was guilty of the offense. A permissive inference "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof." (*County Court v. Allen* (1979) 442 U.S. 140, 157.) Consequently, "[i]nstruction on an entirely permissive inference is invalid as a matter of due process only if there is no rational way the jury could draw the permitted inference." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243-1244.)

---

**9** Defendant's reliance on *Turner v. Marshall*, *supra*, 63 F.3d at p. 820, a case concerning inconsistent statements as evidence of consciousness of guilt, is of no help to defendant because the challenged instructions do not state that flight, knowingly false or misleading statements or suppression of evidence pertaining to the crime "constitute evidence of guilt." (*Ibid.*) Rather, they merely state the jury may consider such evidence to establish he was "aware of his guilt." (CALCRIM 371.)

14

A defendant's alleged consciousness of guilt is well-established as a relevant consideration for the jury. (*People v. Holloway* (2004) 33 Cal.4th 96, 142; *People v. Ashmus* (1991) 54 Cal.3d 932, 977, overruled on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117; *People v. Williams* (2000) 79 Cal.App.4th 1157, 1168.) Nonetheless, defendant complains that the "inference of guilt is unreasonable because it is not more likely than not that one who flees or tries to hide incriminating evidence or makes a false statement is guilty of the charged offense." He suggests that "[a] person who is a suspect in a crime, even if innocent, has a motivation to exculpate himself, even by means of flight, evidence suppression or lying." Thus, he claims the "more logical inference is merely fear of prosecution or conviction."

Defendant's complaint is misplaced because the consciousness of guilt instructions provide equally for these possibilities. They caution the jury that a lie or attempt at concealment merely "may show" a consciousness of guilt and that the jury "may" consider or reject the lie or concealment as probative because "it is up to you to decide its meaning and importance." (CALCRIM Nos. 362, 371, 372.) The instructions also provide that evidence of a deliberate lie or attempt to conceal evidence "cannot prove guilt by itself." (*Ibid*.) The instructions must be read as a whole, and CALCRIM No. 224 instructs the jury that where two or more reasonable conclusions may be drawn from circumstantial evidence, they must accept the one pointing to the defendant's innocence. In any event, because an inference of a consciousness of guilt from a material lie or concealment of evidence is not illogical, defendant's due process challenge fails. (*People v. Pensinger*, *supra*, 52 Cal.3d at pp. 1243-1244.)

15

Defendant acknowledges our Supreme Court has repeatedly approved consciousness of guilt instructions. (E.g., *People v. Moore* (2011) 51 Cal.4th 386, 413-414 [CALJIC No. 2.03 (false statements)]; *People v. Howard* (2008) 42 Cal.4th 1000, 1020-1021 [CALJIC No. 2.52 & CALCRIM No. 372 (flight)], 1024-1025 [CALJIC No. 2.03 & CALCRIM No. 362 (false statements)]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 101-102 [CALJIC Nos. 2.04 (fabricating evidence) & 2.06 (suppressing evidence)].) He contends, however, that unlike their CALJIC counterparts, the CALCRIM instructions here used the phrase "aware of his guilt" instead of "consciousness of guilt." Thus, he asserts the instructions go beyond telling jurors that flight, false statements, or suppression of evidence may be considered as indicative of consciousness of guilt. According to defendant, "[t]he phrase 'aware of his guilt' leaves no room for a conclusion that the defendant was not guilty."

We are not persuaded by the distinction. An identical argument concerning CALCRIM No. 372 was rejected in *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1158-1159 (*Hernandez Rios*). As *Hernandez Rios* explained, an "etymological analysis" based on dictionary definitions of the words "'aware'" and "'[c]onscious'" demonstrates the words are not so dissimilar in meaning to raise a due process claim. Instead, both properly "allow[] a jury to infer from a flight instruction . . . 'guilt consciousness' (in the syntax of the dictionary) or 'consciousness of guilt' (in the syntax of the California Supreme Court)." (*Id*. at pp. 1158-1159.) Finding no significant difference between the phrasing of the two instructions, the appellate court held that CALCRIM No. 372 passes "constitutional muster." (*Hernandez Rios*, at pp. 1158-1159;

16

accord, *People v. Price* (2017) 8 Cal.App.5th 409; *People v. Paysinger* (2009) 174 Cal.App.4th 26, 29-32; *People v. McGowan* (2008) 160 Cal.App.4th 1099, 1104 ["[a]lthough there are minor differences between CALJIC No. 2.03 and CALCRIM No. 362 [citation], none is sufficient to undermine our Supreme Court's approval of the language of these instructions"]; *People v. Burton* (2018) 29 Cal.App.5th 917, 923-926 ["reject[ing] the claim that CALCRIM No. 362 as drafted is [constitutionally] infirm"].) While defendant disagrees with *Hernandez Rios*, he offers no compelling reason to depart from its holding. We find the reasoning of *Hernandez Rios* persuasive and adopt it here.

In short, we conclude all three instructions were properly read to the jury, and none created an impermissible inference or lessened the prosecutor's burden of proof.

C.      *The Trial Court Properly Denied Defendant's* Romero *Motion and Refused to Strike His Prior Serious Felony Enhancements.*

Defendant contends the trial court abused its discretion in denying his request to dismiss one of his two prior strike convictions (*Romero* motion) as well as strike one or both of the prior serious felony enhancements under section 667, subdivision (a). We disagree.

1.      *Additional background facts.*

At sentencing, defendant requested the trial court dismiss one or both of his prior strike convictions—one for first degree burglary in 1988 and one for first degree burglary in 1998—and strike his prior serious felony enhancements. Admitting that he had a lengthy criminal history, defendant argued that (1) the victim in the current offense was his wife, who was not injured by his actions and did not want him prosecuted, (2) his

17

current offense did not involve assaultive contact or injury, and (3) his last strike was in 1998. In response, the People pointed out that (1) defendant's criminal history dates back to 1986, (2) his convictions include violence and the use of weapons, (3) he has suffered nine felony convictions, and (4) he has served several prison sentences based on new charges, as well as probation and parole violations. According to defendant's probation officer, because defendant's current offense is "another example of senseless violence with disregard for the rights of others," he is "a danger to the community and a threat to others."

After analyzing the requisite factors, the trial court denied defendant's request. Regarding defendant's current conviction, the court observed the risk of harm to be "absolutely tremendous" because (1) defendant physically assaulted his wife prior to firing the gun, evidencing his intent to harm her with the gun, (2) the offense occurred during the day, placing other people at risk of being harmed, and (3) when defendant was apprehended he was uncooperative with police, failed to follow instructions, and showed an "utter disregard for lawful authority." The court noted defendant's criminal history, which showed that he repeatedly violated the law, parole, and probation by possessing firearms. The court found defendant to be "exactly the type of person that the People and the Legislature intended to fall within the ambit of the three-strikes law. He continues to offend. The nature of his offenses are becoming more serious and involve assaults with firearms. [¶] And considering that he has spent the majority of his adult life in prison, he is clearly within the three-strikes law." For the same reasons, the trial court refused to strike defendant's prior serious felony enhancements.

18

2.  *Discretion to dismiss prior strike convictions* (Romero *motion*).

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice." (§ 1385, subd. (a); see *Romero*, *supra*, 13 Cal.4th at pp. 529-530.) In considering whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) There is a "'strong presumption that any sentence that conforms to [the sentencing norms established by the three strikes law] is both rational and proper.'" (*In re Large* (2007) 41 Cal.4th 538, 550.) We review the trial court's decision for abuse of discretion. (*People v. Garcia* (1999) 20 Cal.4th 490, 503 (*Garcia*).)

Here, the record demonstrates the trial court considered evidence relevant to defendant's current offense, background, character, and prospects, and arrived at a reasonable decision to deny his *Romero* motion. His current offense involved violence and firing a handgun at the victim. Defendant has a significant criminal record, including convictions for violent offenses: first degree burglary (1988 & 1998), disorderly conduct (1986), credit card forgery/receiving stolen property (1986 & 2000), felon/addict in possession of a firearm (1992, 2008, & 2012), petty theft with a prior (1994), conspiracy to commit a crime (2006), possession of a hypodermic needle/syringe (2008), and possession of stolen property (2012). Although his strike offenses were relatively remote

19

in time, the mere fact that a strike is remote in time is insufficient to grant a *Romero* motion where the defendant has engaged in consistent criminal activity over the intervening years. (*People v. Williams*, *supra*, 17 Cal.4th at p. 163 [13 years between strike and present offense "not significant" because defendant "did not refrain from criminal activity during that span of time, and he did not add maturity to age"]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 320-321 [remoteness of strike priors not significant in light of "unrelenting record of recidivism" and failure to lead crime-free life in intervening years].) As the trial court observed, defendant has been "in and out of custody continuously since 1986," "at best, [he has] served 20 out of the last 33 years in custody." And, he was on parole when he committed his current offense.

Nonetheless, defendant argues that his record shows "a trend of relatively minor and sporadic criminal activity since 1998," and his "profile is far more similar" to that of the defendant in *Garcia*, *supra*, 20 Cal.4th 490, 499. In *Garcia*, the defendant was found guilty of two counts of burglary and had been found to have suffered five serious felony convictions, one of which the trial court dismissed. (*Id.* at p. 495.) On review, the California Supreme Court upheld the lower court's exercise of its discretion to strike the prior conviction allegations, noting the defendant did not receive a lenient sentence (31 years 4 months to life in state prison), all of his prior convictions "arose from a single period of aberrant behavior for which he served a single prison term," he "cooperated with police, his crimes were related to drug addiction, and his criminal history does not include any action violence." (*Id.* at p. 503.) The Supreme Court observed that "all these circumstances indicate that 'defendant may be deemed outside the [Three Strikes]

20

scheme's spirit,' at least 'in part,' and that the trial court acted within the limits of its section 1385 discretion." (*Ibid*.) The same may not be said about the defendant in this case.

Given defendant's continuous inability to conform his behavior to that of a law-abiding citizen, along with his act of arming himself with a firearm, the trial court concluded he fell within the spirit of the three strikes law. We see nothing irrational or arbitrary about that determination and, therefore, find no abuse of discretion.

### 3. *Discretion to dismiss prior serious felony enhancements.*

Effective January 1, 2019, Senate Bill No. 1393 (2017-2018 Reg. Sess.) amended sections 667, subdivision (a), (Stats. 2018, ch. 423, § 64) and 1385, subdivision (b), (Stats. 2018, ch. 1013, § 2) to delete restrictions on the trial court's discretion to strike prior serious felony convictions for sentencing purposes. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) For the same reasons discussed *ante*, the court refused to dismiss defendant's prior serious felony enhancements.

On appeal, defendant points out that, "even in the absence of the prior serious felony enhancements, [he] would have received a sentence of 25 years to life plus 14 years—a substantial term of imprisonment for a man of 52 years of age." Relying on *Coker v. Georgia* (1977) 433 U.S. 584, 592 (*Coker*) ("a punishment is 'excessive' and unconstitutional if it . . . makes no measurable contribution to acceptable goals of punishment") and Justice Mosk's concurring opinion in *People v. Deloza* (1988) 18 Cal.4th 585, 601 (*Deloza*) ("[a] grossly excessive sentence can serve no rational legislative purpose, under either a retributive or a utilitarian theory of punishment"),

defendant argues that "willfully imposing such a sentence where a lesser, more reasonable alternative is available constitutes an abuse of discretion." We disagree.

Defendant's reliance on *Coker* and *Deloza* is misplaced. In *Coker*, four justices of the United States Supreme Court were of the opinion that the death penalty constituted cruel and unusual punishment for the crime of rape of an adult woman where the death determination was, under Georgia law, based on prior felonies. (*Coker*, *supra*, 433 U.S. at pp. 586-600 (plur. opn. of White, J.).) Two other justices concurred because they were of the opinion that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment in all circumstances. (*Id.* at p. 600 (conc. opn. of Brennan, J.); *id*. at pp. 600-601 (conc. opn. of Marshall, J.).) The Supreme Court did not speak at all concerning aggregated sentences that result in life imprisonment. And in *DeLoza*, Justice Mosk's concurring opinion arguing sentences that are impossible to serve violate the Eighth Amendment prohibition on cruel and unusual punishment (*Deloza*, *supra*, 18 Cal.4th at pp. 600-602) has no precedential value. (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.)

For the same reasons discussed *ante*, we find no abuse of discretion in the court's refusal to exercise its discretion and strike one or both of defendant's prior serious felony enhancements.

*D.      Defendant's Sentence Is Not Cruel and Unusual Punishment.*

Defendant contends his sentence of 25 years to life, plus 24 years, violates the Eighth Amendment proscription against cruel and unusual punishment because "it is so

22

grossly disproportionate to [his] individual culpability that it 'shocks the conscience and offends fundamental notions of human dignity.'" We disagree.

At the outset, we note defendant acknowledges his failure to raise this issue at the trial level. Generally, such failure forfeits the claim on appeal because the issue often requires a factual inquiry. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.) Nevertheless, we reach the merits to "prevent the inevitable ineffectiveness-of-counsel claim." (*People v. Norman* (2003) 109 Cal.App.4th 221, 229-230.).

Defendant's argument presents a question of law (*People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217), for which he bears a "considerable burden." (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) "'The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*Ewing v. California* (2003) 538 U.S. 11, 23-24 (*Ewing*) [25 years to life in prison under three strikes law for felony petty theft of three golf clubs valued at $399 each].) In determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, "'[a] court must begin by comparing the gravity of the offense and severity of the sentence. [Citation.] "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate,"

the sentence is cruel and unusual.'" (*In re Coley* (2012) 55 Cal.4th 524, 542; see *Graham v. Florida* (2010) 560 U.S. 48, 60.)

"Reviewing courts must '"grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."'" (*People v. Edwards* (2019) 34 Cal.App.5th 183, 190-191; see *Harmelin v. Michigan* (1991) 501 U.S. 957, 999 (*Harmelim*) (opn. of Kennedy, J., conc. in part & conc. in the judg.) [life without the possibility of parole for nonviolent possession of 672 grams of cocaine].) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272 [life sentence for credit card fraud of $80, passing a $28.36 forged check, and obtaining $120.75 by false pretenses not cruel and unusual].)

### 1. *Federal Constitution.*

Defendant contends his sentence is harsh because, given his age, it "is effectively one of life without the possibility of parole." However, defendant's sentence is not based solely on his current offense but on the basis of his recidivist behavior. "Recidivism has long been recognized as a legitimate basis for increased punishment" (*Ewing*, *supra*, 538 U.S. at p. 25), and "three strikes sentences for less serious felonies have been routinely upheld against Eighth Amendment attack." (*In re Bolton* (2019) 40 Cal.App.5th 611, 622; see, e.g., *Ewing*, at pp. 30-31.) Thus, "[i]n weighing the gravity of [defendant's] offense[s], we must place on the scales not only his current felon[ies], but also his long history of felony recidivism." (*Ewing*, at p. 29.)

Based on the United States Supreme Court decisions of *Harmelin*, *Ewing*, and *Lockyer v. Andrade* (2003) 538 U.S. 63, 68, 77 [two consecutive 25-year-to-life terms for two separate thefts of less than $150 worth of videotapes upheld], which found that lengthy prison sentences were not "grossly disproportionate" to the nonviolent and/or petty theft crimes of recidivists in those cases, we conclude the sentence of 25 years to life, plus 24 years, imposed on defendant is not grossly disproportionate under the Eighth Amendment. That defendant likely will spend the rest of his life in prison as a result of his age does not persuade us that his sentence is grossly disproportionate to his offenses, particularly when viewed in light of his prior criminal misconduct spanning many decades. We thus reject his claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.

### 2.    *State Constitution.*

Article I, section 17, of the California Constitution prohibits the infliction of cruel or unusual punishment, namely punishment that is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478 (*Dillon*); see *In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).) Under California's three strikes law, when the defendant has at least two prior strike convictions, the Legislature has set life sentences as the appropriate penalty for any current felony. (§§ 667, subd. (e), 1170.12, subd. (c).) Thus, a 25-year-to-life prison sentence is imposed not only for the defendant's current felony but also for his recidivism. (See *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366.) When reviewing a claim of disproportionality or cruel or unusual punishment

under the state Constitution, we (1) examine the nature of the offense and offender, (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction, and (3) measure the punishment to the penalty for the same offense in different jurisdictions. (*Lynch*, at pp. 425-427.)

Regarding the first prong or the nature of the offense and the offender, we evaluate the circumstances of the current offense, along with defendant's personal characteristics, including his age and prior criminality. (*People v. Lucero* (2000) 23 Cal.4th 692, 739.) According to defendant, he "had never been convicted previously of a violent offense; his serious felony priors of first degree burglary were property crimes committed when the residents were absent[; and his] other less serious offenses were largely crimes of possession—of firearms, hypodermic needles and stolen property." However, he ignores the facts that he chose to arm himself with a gun despite being prohibited from doing so, he committed his current offense by firing a weapon at a defenseless victim, he fled the scene, and he later attempted to hide from law enforcement. Moreover, while defendant did not injure the victim, that hardly mitigates the danger he put her in by firing a gun at her. Furthermore, defendant committed his first felony when he was 20 years old and he committed his current felony when he was 46 years old. From ages 20 to 46, he spent a significant period of time incarcerated as a result of his numerous prior convictions, and his prior performance on probation and parole was described as "unsatisfactory." Defendant is not being punished again for his prior crimes. Rather, his 49-year-to-life sentence was properly based on his recidivism. "[A] defendant's history of recidivism, which is part of the nature of the offense and the offender, justifies harsh punishment."

26

(*People v. Meeks* (2004) 123 Cal.App.4th 695, 709 [25-year-to-life sentence under the three strikes law for willful failure to register as a sex offender within five working days of an address change].)

The next step in the *Lynch* analysis is to compare defendant's punishment with punishments prescribed for more serious crimes.  However, this portion of the analysis is inapplicable to sentencing under the three strikes law.  (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338 (*Cline*).)  This is so because "it is a defendant's 'recidivism in combination with his current crimes that places him under the three strikes law.  Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant's] punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.'"  (*Ibid*.)

The third prong of *Lynch* calls for a comparison of the California punishment with punishment for the same crimes in other states.  "[A] comparison of California's punishment for recidivists with punishment for recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole.  California's scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders."  (*Cline*, *supra*, 60 Cal.App.4th at p. 1338.)

Defendant has had ample opportunity to reform but has not chosen to do so.  We conclude his sentence does not constitute cruel and unusual punishment under either the state or federal Constitution.

*E.     Defendant's Ability to Pay Fines and Fees* (Dueñas).

Defendant asserts that under the reasoning of *Dueñas*, *supra*, 30 Cal.App.5th 1157, the imposition of a $40 court operations and facilities fee (Pen. Code, § 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $300 restitution fine (Pen. Code, § 1202.4) without considering his ability to pay violated his right to due process. He seeks remand to allow him to request an ability to pay hearing on his various fines and fees. Acknowledging the holding in *Dueñas*, the People contend that if we determine the trial court erred in failing to hold an ability to pay hearing, the error is harmless beyond a reasonable doubt based on our holding in *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 (*Jones*). As to the $300 restitution fine, the People assert the fine is a form of punishment and should principally be examined in light of the excessive fines clause, under which ability to pay is not determinative.[10]

We conclude remand is not necessary for an ability to pay hearing given defendant's lengthy sentence and the likelihood of his ability to earn prison wages.

---

[10] "It makes no difference whether we examine the issue as an excessive fine or a violation of due process." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 [considering an excessive fine challenge to the civil penalty imposed under Health & Saf. Code, § 118950, subd. (d)]; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["imposition of a fine on a defendant unable to pay it is sufficient detriment to trigger due process protections"]; *Dueñas*, *supra*, 30 Cal.App.5th at p. 1171, fn. 8.)

*1.    Further background information.*

According to the probation officer's report, at the time of his sentencing, defendant was 51 years old, five feet nine inches tall, and weighed 160 pounds.  He was married, had two adult children, had no income or expenses, and had obtained his GED.  He had good physical health, with no physical limitations or disabilities.  The report recommended the trial court order defendant to pay a $10,000 restitution fine (Pen. Code, § 1202.4), a $30 criminal conviction assessment (Gov. Code, § 70373), a $40 court operations and facilities fee (Pen. Code, § 1465.8, subd. (a)(1)), and a $10,000 parole revocation restitution fine (Pen. Code, § 1202.45).  At the sentencing hearing, the trial court ordered defendant to pay the recommended amounts, with the exception of the restitution fines, which the court imposed in the amount of $300 each.[11]  The court never conducted a hearing, nor commented, on defendant's ability to pay; however, when it indicated its intent to impose $3,000 in victim restitution, defense counsel inquired whether the court would consider imposing "the limited restitution fine rather than $3,000."  The court replied, "All right.  I'll do $300 victim restitution fine."

*2.    Applicable law.*

The *Dueñas* court concluded:  "[T]he assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon

---

[11] The $300 parole revocation restitution fine (§ 1202.45) was stayed pending successful completion of parole.

29

indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655.)[12] In contrast to court assessments, a restitution fine under Penal Code section 1202.4, subdivision (b), "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso*, at p. 655.) Penal Code section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered as a "compelling and extraordinary reasons" not to impose the statutory minimum fine.

This court has addressed the claim of *Dueñas* error and concluded a defendant who has not objected to the imposition of a restitution fine and court assessments has not forfeited the issue on appeal. (*Jones*, *supra*, 36 Cal.App.5th at pp. 1031-1034 [no forfeiture for failing to object to imposition of minimum restitution fine ($300) and court security fee ($70)].) We also concluded a *Dueñas* error might be harmless if the record shows a defendant will be able to earn the total amount imposed during imprisonment. (*Jones*, at pp. 1034-1035 [a defendant who was sentenced to state prison for a term of six

---

**12** Several Courts of Appeal, including this court (*Jones*, *supra*, 36 Cal.App.5th at pp. 1030-1035) have applied the analysis in *Dueñas*. (See, e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 929-934; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted Nov. 13, 2019, S257844 [applying due process analysis to court assessments].) Others have rejected the due process analysis (e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946) or concluded the imposition of fines and fees should be analyzed under the excessive fines clause of the Eighth Amendment. (See, e.g., *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061; *People v. Kopp*, at pp. 96-97 [applying excessive fines analysis to restitution fines].)

years—with a presentence custody and conduct credit of 332 days—would earn sufficient prison wages to pay fines and assessments of $370]; see *People v. Cervantes* (2020) 46 Cal.App.5th 213, 228-229.)

### 3.    *Analysis.*

Here, the record contains sufficient evidence to support defendant's ability to pay the amounts imposed given his prison sentence of 25 years to life, plus 24 years.  The trial court is presumed to know the law (*People v. Thomas* (2011) 52 Cal.4th 336, 361), which includes the requirement that "every able-bodied prisoner imprisoned in any state prison" must perform labor for compensation, and prison wages range from $12 to $56 a month, depending on the job and skill level involved.  (Pen. Code, § 2700; Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).)  Up to 50 percent of defendant's wages and trust account deposits will be deducted to pay any outstanding restitution fine, plus another five percent for the administrative costs of this deduction.  (Pen. Code, § 2085.5, subds. (a), (e); Cal. Code Regs., tit. 15, § 3097, subd. (f).)  The record reflects that at the time of sentencing, defendant was 51 years old and had no disabilities.  His health was described as "good," he was married, and had two adult children.

In the absence of some indication that defendant has a disability precluding him from performing any type of labor in prison, it must be presumed that he is capable of earning prison wages.  (See *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1377, fn. 6.)  The trial court could properly consider these wages and find, albeit implicitly, that defendant can afford to pay the ordered fees through his prison wages.  (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's

31

prison wages]; *Jones*, *supra*, 36 Cal.App.5th at p. 1035 [same]; *People v. Cervantes*, *supra*, 46 Cal.App.5th at p. 229 [same].) Also, there is no evidence defendant has any other financial obligations that would interfere with his ability to pay. Although there is no guarantee defendant will actually obtain paid labor while serving his prison term, in the absence of contrary evidence, we must assume he will become eligible for it during his lengthy prison sentence.

For the above reasons, we conclude remand is unnecessary.

F.      *Senate Bill No. 136 Applies Retroactively to Defendant.*

After this case was fully briefed, the parties filed supplemental briefs on the applicability of Senate Bill No. 136, which became effective on January 1, 2020. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 680-681 [holding Senate Bill No. 136 applies retroactively].) Senate Bill No. 136 amended section 667.5, subdivision (b) (Stats 2019, ch. 590, § 1), which now limits one-year prior prison term enhancements to convictions for certain sexually violent offenses. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 340.)

The parties agree defendant's four one-year prior prison term enhancements must be stricken under Senate Bill No. 136;[13] however, the People contend the matter should be remanded for resentencing to a term that does not exceed the original. We find no reason to remand for resentencing. Because the trial court imposed the maximum possible sentence,[14] there is no need for the court to again exercise its sentencing discretion. (See *People v. Lopez*, *supra*, 42 Cal.App.5th at p. 342 ["Because the trial court imposed the maximum possible sentence, there is no need for the court to again exercise its sentencing discretion" due to Senate Bill No. 136]; *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15 ["Because the resentencing court had imposed the maximum possible sentence, regardless of whether the two-year on-bail enhancement was stricken, there is no need to remand the matter to the trial court to exercise its sentencing discretion anew."].)

Accordingly, we order the judgment modified to strike the four one-year enhancements imposed under section 667.5, subdivision (b).

---

[13] The court imposed four one-year enhancements under section 667.5, subdivision (b), for defendant's convictions for felon in possession of firearm (two), receiving stolen property, and conspiracy; none is a sexually violent offense.

[14] The trial court imposed the upper term of 10 years on the firearm enhancement (§ 12022.5, subds. (a), (d)), and the upper term of five years on each of the serious felony enhancements (§§ 667, subd. (a)(1)).

## III.  DISPOSITION

The judgment is modified to strike the four one-year enhancements imposed under section 667.5, subdivision (b).  The clerk of the superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


MILLER
J.


MENETREZ
J.

34